

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Southern Division*

---

| | | | |
|---|---|---|---|
| *Rajeev R. Raghavan*<br>*Assistant United States Attorney*<br>Rajeev.Raghavan@usdoj.gov | *Mailing Address:*<br>*6500 Cherrywood Lane, Suite 200*<br>*Greenbelt, MD 20770-1249* | *Office Location:*<br>*6406 Ivy Lane, 8th Floor*<br>*Greenbelt, MD 20770-1249* | *DIRECT: 301-344-4031*<br>*MAIN: 301-344-4433*<br>*FAX: 301-344-4516* |

September 14, 2021

The Honorable Paul W. Grimm
United States District Judge
United States Courthouse
6500 Cherrywood Lane
Greenbelt, Maryland 20770

      Re:   *United States v. Sheila Faine Miles*
             Crim No. PWG-21-20

Dear Judge Grimm:

      This letter is in aid of Defendant Sheila Faine Miles' sentencing on September 20, 2021. The Defendant pled guilty on March 8, 2021, to an information charging her with filing a False, Fictitious, and Fraudulent Claim, in violation of 18 U.S.C. § 287. The Government submits that a sentence of **24 months**—at the low end of the applicable Sentencing Guidelines—and **1 year of supervised release** is the appropriate disposition of this case and a sentence sufficient but not greater than necessary to satisfy the goals of sentencing.

      Starting with the nature and circumstances of the offense, the Defendant was employed at the Internal Revenue Services' ("IRS") Office of Chief Counsel as a Management Analyst when she filed the two fraudulent tax returns in this case. In March 2017, the Defendant filed a tax return prepared by her usual tax preparer. This tax return accurately listed the Defendant's taxable income and sought a refund of $7,608. Two months before this, in January 2017, the Defendant filed a return by herself claiming a total taxable income of $833,499.50 and requesting a fraudulent refund in the amount of $600,120. In order to purportedly justify her fraudulent return, the Defendant filed a Deed of Trust and Certificate of Satisfaction for her residence and a statement from her bank showing the Defendant as the sole owner of her residence and an outstanding mortgage balance of $235,639.93. When an IRS representative contacted the Defendant due to the fact that two tax returns had been filed for the same tax year, the Defendant doubled-down on her fraudulent scheme, as Miles told the IRS representative that she had additional income to report and that she intended to file an amended return.

      The Defendant filed that subsequent amended return in November 2017. The Defendant now claimed a fraudulent refund of $833,499.50—the same amount she had put down in her January 2017 fraudulent return as her taxable income. To support this amount, the Defendant submitted a number of fraudulent documents—handwritten 1099-INT forms. Each of these included alleged "interest income" and withholding of hundreds of thousands of dollars.

Following the Defendant's submission of this fraudulent amended return, in May 2018, the Defendant submitted several frivolous documents, including (i) a monthly statement from the Defendant's mortgage with Bank 1 on which the Defendant stamped and signed with the note "Accepted for Value and Returned for Value, Exempt from Levy for Closure, Settlement, Setoff" and dated May 14, 2018; (ii) a monthly statement for a home loan with Bank 3 on which the Defendant stamped and signed with the same note and date; (iii) two Payment Voucher forms, Form 1040-V, signed by the Defendant and valued at $278,043.00 and $192,344.00; (iv) several duplicate Notice Concerning Fiduciary Relationship forms, Form 56, signed by the Defendant; (v) several duplicate Information Return for Publicly Offered Original Issue Discount Instruments, Form 8281, signed by the Defendant, valued at $252,766.57 and $117,585.67, and describing the Defendant's debt instrument as "MORTGAGE."

The above stipulated facts show the Defendant's dedication to filing her fraudulent claim. The Defendant mailed three different packages to the IRS—her employer—to induce the IRS to issue a tax refund based on the Defendant's fraudulent returns. Following an IRS representative contacting the Defendant after the agency received her legitimate return and fraudulent return, the Defendant did not back away from her fraud, but instead reaffirmed her intention to file another fraudulent return, telling the IRS representative that she had alleged additional income to report. The Defendant reported this alleged income in November 2017, and to support her request for a $833,499.50, the Defendant hand wrote and sent three 1099-INT forms claiming alleged income interest payments. Finally, continuing her deception, the Defendant mailed several frivolous documents to the IRS six months after she sent her fraudulent amended return. Each of these mailings was intended to convince the IRS to issue a refund to which she was not entitled. The Defendant also sent to the IRS fraudulent supporting documents that she authored to support her fraudulent claims. The Defendant's scheme to obtain this fraudulent return required time and effort—not only in completing the two returns, but also in filling out and submitting the many fraudulent documents doctored by the Defendant to support her return. The Defendant did all of this while being employed by the very agency from which she was seeking her fraudulent return.

The nature and circumstances of the offense demonstrate the need for a period of incarceration. As described above, the offense perpetrated by this Defendant is serious. Though the IRS flagged the fraudulent returns and no loss resulted, the Defendant's repeated and relatively sophisticated attempts to procure this fraudulent return speak both to her criminal intent and her lack of respect for the law. A period of incarceration would provide just punishment for this offense. It would also serve as an adequate deterrent for this Defendant and those like her—demonstrating that the choice to engage in crime will result in serious consequences, even if no loss occurs.[1]

---

[1] The report filed by the Defendant from MCM Data Consulting ("MCM") also supports the need for a period of incarceration to avoid unwarranted sentencing disparities between like defendants. The Government notes at the outset that MCM's report does not include any of the underlying data supporting its analysis and the table set forth on page three of MCM's report regarding sentences in the District of Maryland does not include case numbers that would be relevant and necessary to determine the factual circumstances underlying those convictions and sentences. Nonetheless, 78% of defendants nationwide and 71% in the District of Maryland with a total offense level of 17 and no criminal history points were sentenced to a term of incarceration for fraud offenses. Sentencing this Defendant to probation as she has requested would create an unwarranted sentencing disparity—based on this limited data.

The letters in support filed on the Defendant's behalf speak well of her character, including her care for her elderly parents. Still, the Government contrasts these letters with the Defendant's repeated actions in the instant case. The Defendant was employed by the IRS and made close to six-figures—a decent wage. As evidenced by the letter submitted by the Defendant's husband, the Defendant and her spouse appear to have been motivated by greed—having previously defrauded the United States with a fraudulent refund. (ECF No. 22, Ex. 2 at 2.) Following this first success, the Defendant and her spouse attempted to up the ante and sought to fraudulently obtain a sizeable refund from the IRS "to see if it would actually work." (ECF No. 8 at 9.) A sentence that includes a term of imprisonment is necessary to promote respect for the law and account for the seriousness of the Defendant's offense, as well as the other 3553(a) factors.[2]

For these and other reasons to be presented at sentencing, the Government respectfully requests that the Court sentence the Defendant to **24 months** in prison. The Government also asks that the Court impose **1 year of supervised release**.

Very truly yours,

Jonathan F. Lenzner
Acting United States Attorney

By: \_\_\_\_/s/_____
Rajeev R. Raghavan
Assistant United States Attorney

cc: Joshua D. Greenberg, Esq. (via CM/ECF)
U.S. Probation Officer Quentin T. Lowe (via CM/ECF)

---

[2] The Defendant argues that despite the fact that she is fully vaccinated, she has a potential risk of contracting COVID-19 in prison. As noted above, the Defendant pled guilty to an information and has not been incarcerated during the pendency of this case. The Defendant has failed to articulate a risk of contracting COVID-19 with a full vaccination, and if there is a time and place where COVID-19 demonstrably affects her incarceration or health, the Defendant can always move for compassionate release to the extent there is such a basis for her to argue for release on that ground.